FAX or Internet

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

In the Matter of the Search of )
)
*A hogan located at 2.5 miles southwest of* )
*Jeddito Chapter House in Jeddito, Arizona* )   Case No.  21-4139mb
*GPS Coordinates: 35.695712, -110.085131* )
)

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer.

An application by a federal law enforcement officer for the government requests the search of the following person or property located in the   District of Arizona
*(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A-2

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B-2

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     June 3, 2021
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.     ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
    Camille D. Bibles                .
          *(Name)*

☐ I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a  (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.
                                                                                                                                            ☐ until, the facts justifying, the later specific date of _____.

Date and Time Issued: _____    **Camille D. Bibles**  Digitally signed by Camille D. Bibles
                                                                                              Date: 2021.05.20 11:58:24 -07'00'
                                                                                        *Judge's Signature*

City and State:    Flagstaff, Arizona            Honorable Camille D. Bibles, U.S. Magistrate Judge
                                                                                      *Printed Name and Title*

| Return | | |
|---|---|---|
| Case No.: 21-4139mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

FAX or Internet
_____

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

A hogan located at 2.5 miles southwest of Jeddito Chapter House in Jeddito, Arizona
GPS COORDINATES: 35.695712, -110.085131

)
)
)
)

Case No. 21-4139mb

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>F.B.I. Special Agent Jenifer J. Mulhollen</u>, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153 and 113(a)(3) | Assault with a Dangerous Weapon (Indian Country) |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: *s/AUSA Emma Mark*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 05/20/2021

*Applicant's Signature*

Jenifer J. Mulhollen, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone** X

Date/Time _____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.05.20 11:58:53 -07'00'

*Judge's Signature*

City and State: Flagstaff, AZ

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A-2 – PLACE TO BE SEARCHED

**ADDRESS/DESCRIPTION OF LOCATION:** A hogan located at 2.5 miles southwest of Jeddito Chapter House in Jeddito, Arizona

**DESCRIPTION OF HOUSE:** Light colored Hogan with a brown roof and a white front door.

**GPS COORDINATES:** 35.695712, -110.085131

**PHOTO ATTACHED:** Yes



## **ATTACHMENT B-2 – THINGS TO BE SEARCHED FOR AND SEIZED**

1. Any evidence of assault, including blood evidence, dried blood, and/or biological substances that appear to be blood, which may be on the floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels).

2. Any knife.

3. Any cellular phones/devices in the residence, including any iPhones, smart phones, or flip phones. (If recovered, separate warrants will be sought to search such devices.)

4. Evidence of the possession and/or use of any unlawfully possessed controlled substances (e.g., methamphetamine) and paraphernalia (e.g., pipes, bongs, pushers, small baggies containing any possible drug residue).

5. Evidence of the possession and/or use of intoxicating liquor, including: alcoholic beverages (e.g., beer, wine, whiskey); empty or partially empty cans, bottles, or containers for intoxicating liquor (e.g., beer cans or whiskey bottles); and receipts of the purchase of intoxicating liquor/alcoholic beverages.

6. Indicia of ownership, occupancy, and/or use of the residence, including such things as: mail (e.g., bills) that may be addressed to the occupant(s); driver's licenses and/or identification cards; personal property such as clothing that may identify the owners and/or occupants of the structure; and photographs of the owners and/or occupants at the structure.

7. Photographs of the residence and the things seized.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALLY SUBMITTED AFFIDAVIT**

I, Jenifer J. Mulhollen, being duly sworn, depose and state the following:

1. I have been employed as a Special Agent (SA) of the Federal Bureau of Investigation (FBI) since February 2013. As a SA of the FBI, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. In the course of my official duties, I am charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation (Navajo Nation) within the District of Arizona. Based on my training, education, and experience, I know that the Navajo Nation is a federally recognized tribe.

2. The facts contained in this affidavit are based upon my personal knowledge, training, and experience, as well as my investigation of this case, including information provided to me by law enforcement officers and other persons and/or witnesses including those listed herein.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause, your Affiant has not included every fact known to your Affiant concerning this investigation.

**INTRODUCTION**

4. As more fully detailed below, this case involves a stabbing that occurred on May 11, 2021, in Jeddito, Arizona on the Navajo Nation, Indian Country, in the District

of Arizona. The victim, N.B., was stabbed twice in the chest outside of his truck. As a result of the stabbing, N.B. died. The suspect, Alonzo YESSLITH, admitted to stabbing N.B. in the chest during an altercation outside of N.B.'s vehicle. N.B. is an enrolled member of the Navajo Nation.

5. This is a common affidavit supporting the applications for three search warrants seeking evidence of a violation of Title 18, United States Code, Sections 1153 and 113(a)(3). The proposed warrants, more specifically described in **Attachments A1-A3** and **B1-B3**, are seeking authorization to search N.B.'s truck, YESSLITH'S Hogan, and to obtain fingerprint and DNA evidence from YESSLITH.

### INVESTIGATION/PROBABLE CAUSE FOR SEARCH WARRANT

6. On May 12, 2021, your Affiant was notified by Navajo Nation Criminal Investigator (NNCI) Alejandro Dayea of a stabbing that occurred on May 11, 2021 approximately 0.4 miles south of mile post 409 off Arizona State Highway 264 in Jeddito, Arizona on the Navajo Nation, Indian Country, in the District of Arizona. Your Affiant was informed N.B. was stabbed just outside of his vehicle. Navajo Nation Police Sgt. Bitah responded to the scene and conducted an inventory search of the vehicle and impounded the vehicle at Keams Canyon Towing in Keams Canyon, Arizona. The vehicle is a 2006 Ford F-150 bearing Arizona license plate CMB6664 with VIN#1FTRX14W16KD28659. Your Affiant conducted a registered vehicle check and the registered owner of vehicle was N.B.

7. On May 12, 2021, your Affiant responded to N.B.'s residence located approximately 1.5 miles southwest of milepost 409.1 off Arizona State Highway 264 in

Jeddito, Arizona on the Navajo Nation, Indian Country, in the District of Arizona. Upon arrival, NNCI Dayea informed your Affiant N.B.'s family member, L.Y., loaded N.B. into the back of a Chevrolet Silverado pickup truck and drove N.B. to rendezvous with an ambulance. N.B. refused medical treatment, and L.Y. drove N.B. to the Hopi Healthcare Center where N.B. refused medical treatment again. L.Y. then drove N.B. back to the residence and left N.B. in the Chevrolet Silverado pickup truck overnight. When N.B.'s family member came out to check on N.B. the following morning, N.B. was deceased.

8. Your Affiant learned from NNCI Dayea that a passenger, L.C., was in N.B.'s truck when the stabbing occurred. On May 12, 2021 your Affiant and SA Hornbeck interviewed the passenger, L.C. On May 11, 2021, L.C. was seated in back passenger's seat of N.B.'s truck. They were driving on a road when an unknown male approached the vehicle and an altercation occurred. N.B. got out of the truck. N.B. and the unknown male got into a fistfight. L.C. saw N.B. fall down on the ground after he opened the door to the truck. L.C. described the unknown male as skinny with long hair. L.C. did not know the unknown male had a knife during the fight but saw the unknown male strike N.B. in the chest with his fist.

9. On May 12, 2021 your Affiant and SA Hornbeck interviewed P.B. P.B. was driving approximately five minutes behind N.B. and L.C. on the night of the stabbing. When P.B. arrived at the scene a few minutes after the stabbing, the unknown male was not there. P.B. observed N.B.'s truck and N.B. laying on his back on the ground. P.B. noticed a wound on N.B.'s upper chest, but the wound was not bleeding. P.B. asked N.B. who did it and N.B. would not say who stabbed him. P.B. knew that Lorenzo LNU (known

to your Affiant as YESSLITH) was the one who stabbed N.B. P.B. knew N.B. and YESSLITH had argued earlier in the day but was not sure why. P.B. described Lorenzo LNU has having a tattoo over his right eye. YESSLITH is known to your Affiant to have a tattoo over his right eye.

10. On May 12, 2021, your Affiant, FBI SA Timothy Hornbeck, NNCI Alejandro Dayea, and NNCI Donald Seimy canvassed the area around where N.B. was stabbed (N 35.74678, W 110.13749). NNCI Seimy located a knife that appeared to have a red blood like substance on it. Near the knife a set of shoe impressions were located. The shoe impressions appeared to head south, cross the road, and head toward a group of houses. Numerous photographs were taken of the shoe impressions and the knife.

11. On May 13, 2021, your Affiant and SA Hornbeck interviewed YESSLITH at the Navajo County jail in Holbrook, Arizona. YESSLITH was read his Miranda rights and requested a lawyer. After a few minutes, YESSLITH reinitiated contact with your Affiant and then stated he wanted to speak to the Agents. YESSLITH was re-advised of his rights, verbatim, per a standard Advice of Right form (FD-395). YESSLITH indicated he understood his rights and agreed to speak with Agents.

12. YESSLITH provided the following information: On May 11, 2021, YESSLITH and N.B. were driving around in N.B.'s vehicle and drinking in Jeddito. N.B. dropped YESSLITH off at his hogan. YESSLITH then went to his aunt and uncle's house to eat. This was around the evening time and the sun was still up. YESSLITH left their house to go see his cousin "Frankie." This is when the "altercation" happened between YESSLITH and N.B.

4

13. YESSLITH stated the altercation took place on the road. He initially stated that N.B. was in his vehicle at YESSLITH's turn-off when the altercation occurred. YESSLITH and N.B. talked and then fought. YESSLITH stated the fight became a little bit physical "here and there," but there was "nothing that happened" and then YESSLITH just walked off and went to his hogan. YESSLITH stated that he punched N.B. during the fight but didn't use anything else. YESSLITH also stated that when he walked away from the fight, N.B. left in his truck and he hasn't seen him since then.

14. Your Affiant informed YESSLITH witnesses came forward saying YESSLITH stabbed N.B. YESSLITH replied, "That's messed up." YESSLITH initially denied having a knife. YESSLITH then stated he was walking on the road near his turn-off when N.B. came by in his truck. N.B. pulled over and started talking to YESSLITH. YESSLITH said he started walking away and that is when N.B. and YESSLITH start fighting. YESSLITH then admitted, "Yeah I broke out the knife." When asked what YESSLITH did with the knife, he replied, "Stabbed him." YESSLITH admitted to stabbing N.B. in his chest.

15. YESSLITH then stated that at some point N.B. was on top of YESSLITH trying to choke him with his shirt. YESSLITH was able to push N.B. off him. N.B. tried to hit YESSLITH again with his fist. Both YESSLITH and N.B. were standing when YESSLITH stabbed N.B. twice in the chest. Your Affiant asked YESSLITH why he did not walk away when he and N.B. were standing and YESSLITH stated, "Yeah I could of."

16. After YESSLITH stabbed N.B., he tossed the knife and walked home to his hogan. YESSLITH stated N.B. was still standing when YESSLITH left and started walking

5

home. YESSLITH described the knife as a "regular knife" that he got from his house. YESSLITH stated he did not touch N.B.'s truck during their altercation.

17. YESSLITH stated, "I was pretty drunk." On a scale of one to ten with one being sober and ten being blacked out drunk, YESSLITH stated he was a six. He also stated as far as he knew he was protecting himself.

18. YESSLITH denied consent for Agents to obtain his DNA and denied consent and to search his hogan. YESSLITH also retracted his consent for Agents to take photographs of his alleged injuries.

19. On May 13, 2021, an autopsy was conducted on N.B. Your Affiant spoke to the medical examiner, who confirmed N.B. was stabbed twice in the chest and the manner of death is Homicide.

## THINGS TO BE SEARCHED FOR AND SEIZED (Vehicle/Hogan)

20. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in **Attachments B-1 and B-2** will be found in N.B.'s white 2006 Ford F-150, and Alonzo YESSLITH's hogan, more fully described in **Attachments A-1 and A-2.**

21. Based on your Affiant's training, education, and experience, suspects often leave behind evidence from the commission of an offense. Thus, your Affiant is seeking a warrant to search for evidence, fruits, and instrumentalities of this offense, including DNA evidence, blood evidence, clothing, and knives, as further described in **Attachments B-1 and B-2.**

22. Additionally, based on your Affiant's training and experience, it is also known that indicia of ownership and/or occupancy are important in a criminal case. It can help establish possession or control of the vehicle/hogan, knowledge, and intent. Based on your Affiant's training and experience, indicia of ownership and occupancy includes such things as: mail showing a person's address, receipts, vehicle title, registration; identification cards, and photographs of the items inside the vehicle/hogan.

### THINGS TO BE SEARCHED FOR AND SEIZED (Alonzo YESSLITH)

23. A DNA standard from Alonzo Lee YESSLITH, **Attachments A-3,** is needed to confirm or deny the presence of his DNA, as more fully described in **Attachments B-3,** on evidentiary items seized during the investigation to include but not limited to a knife.

24. Major case prints from Alonzo Lee YESSLITH, as more fully described in **Attachments A-3,** are needed to confirm or deny the presence of his fingerprints (latent prints), **Attachments B-3,** on evidentiary items seized during the investigation to include but not limited to a knife.

25. Accordingly, your Affiant respectfully requests that a search warrant be issued authorizing the search and seizure of DNA and major case prints to be obtained for the reasons stated above. Process of collection will be limited to the seizure of a DNA standard by the use of buccal swabs. Method of collection will be oral, that is, by inserting the buccal swabs into the mouth for the purpose of collecting saliva and cheek cells. Method of collection for major case prints will be limited to inking the left and right hands, rolling the hands onto paper for fingerprints (latent prints), and palm prints.

## CONCLUSION

26. This affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose. Based on the forgoing, I request that the Court issue the proposed search warrants because there is probable cause to believe that Alonzo Lee YESSLITH violated 18 U.S.C §§ 1153 and 113(a)(3), Assault with a Dangerous Weapon.

19. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence described in **Attachments B-1 to B-3**, will support an investigation related to violation 18 U.S.C. §§ 1153 and 113(a)(3).

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_May 20_, 2021
Date

Special Agent Jenifer J. Mulhollen
Federal Bureau of Investigation

**Telephonically sworn** on the _20th_ day of May 2021.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.05.20 11:59:21 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

8